Good morning to all counsel. We will call the cases in the order listed on the calendar. First case is Keenan v. Woodford. And Keenan, the petitioner, is the appellant, right? Good morning, Your Honors. I am Robert Bryan. I am appearing on behalf of Maurice Keenan, the appellant. There are two generally large areas which are before this Court today. The first involves whether or not the appellant was mentally incompetent at the time of trial, whether or not there should have been a hearing. And, of course, the second one was the withdrawal by defense counsel of all guilt-faced defenses. No evidence was presented at the guilt phase, which occurred out of the presence, without the knowledge and without any waiver from the defendant, the appellant. But in a sense, the viability of that claim also depends on competence, doesn't it? I submit, Your Honor, it does not. However, certainly, viability would be greatly enhanced. I shouldn't say depends. I mean, if, for instance, you lose on the first claim on competence, then there's no prejudice from that second claim, is there? Because the defense you claim shouldn't have been asserted was competence or incompetence, no? I respectfully disagree with that because the competence, of course, relates, as the Court is aware, to the mental state of the defendant at the time of trial. There were viable defenses, even though no evidence was presented at the guilt phase. And we have before this Court a wealth of evidence from experts and anecdotal evidence, both at the time and since then, that the defendant at the time of the homicide was in a reduced mental state. There's also some evidence supporting what was then the standard of insanity in criminal cases. This was the capital case tried here in San Francisco. So at the time of the trial, what was the evidence of incompetence that was actually before the trial judge? The evidence of competence before the trial judge, Your Honor, was there were a couple areas. First would be the very bizarre behavior of Maurice Keenan in open court. On one occasion, he actually had very much heavier tables than these. There would be like three sizes, three times the size of the counsel table in this courtroom. He actually upended the table, was hurling obscenities at everyone in the court, including the superior court judge, and was just ranting and raving and was just totally out of his mind. On another occasion, the defendant went into court bearing in mind the state was seeking the death penalty, which it eventually was successful with, and he wanted to plead guilty over the advice of his then attorney. This was a previous attorney, not the one in issue before this court. And it was an open-ended plea with no plea bargain whatsoever. When the court started inquiring as to his understanding of the plea, the nature of it, his rights, his answers were really just nonsense, and it became so bizarre that the trial judge finally gave up and rejected the guilty plea. He also, during that hearing, stated that he was on drugs, was consuming drugs in jail. And it seems like, with all respect to the judge at that hearing who was also the judge who presided over the trial, it seems that when a defendant is in court attempting to plead guilty, is giving gibberish, is talking nonsense, and admits in open court that he was on drugs at the time, and he certainly was not out on bail, he was a guest of the county jail here in San Francisco, that that should have triggered in the judge's mind. Does someone have a cell phone on? Henry. Okay. Go ahead. I'm sorry. Mr. Bryant, since you've been interrupted, can I ask you a question? Maybe the person's incompetent. What I really would like to get you to focus on is this is an appeal from the federal district court. Yes. Which has held a hearing. The very experienced judge has held a hearing and believed the testimony of your client's lawyers, who did not perceive this bizarre behavior to be overwhelmingly crazy, as you describe it. So we're not going to retry the facts. You've got to persuade us there's something fatally erroneous in Judge Jensen's belief in the lawyers for your client. Well, if I may point out a couple of things, and I will say this, that there's no saying about not biting the hands that feed you. And Judge Lowell Jensen reversed the guilt ‑‑ I'm sorry, the penalty phase, and my client now is ‑‑ Oh, the sentence of death. Yeah. So I was very happy with that. And to be able to secure life without parole rather than death, when we went back to the lower court, state court, I was certainly happy with nevertheless. The hearing actual evidence I think only lasted four court days, Your Honor, not counting arguments. And it seemed like it was weeks rather than four days. But a lot of the evidence came in by stipulation. We had a wealth of psychiatric, psychological reports, reports from people who saw the defendant at the time of trial, during pretrial proceedings, at the time he weighed the conflict, with the attorney who also represented his wife who had initially said that his future client was guilty of murder, that he was culpable, that he was an evil person. So it seemed that confidence was a very big issue. But a lot of these witnesses Judge Jensen did not hear because we would have been in court for a month and it would have cost much more than it already was, a very expensive case. But I'll give some examples. And I'm just, I wondered. Counsel, one of the things that Judge Jensen found troubling, which I find troubling, is that most of the psychiatric evidence, Dr. Benson, Dr. Pierce, that came in, related to a period of time very long after the period of the trial. And the standard is, should a reasonable judge who was conducting the trial at the time have so much before him or her that a sua sponte competency hearing was warranted? We need to examine what was in front of the trial judge who was conducting the trial, not interviews in 1994. I can see, Your Honor, that Dr. Steve Patel, Dr. Fred Rosenthal, Dr. Ann Evans came along 10 or 12 years later. They did find organic brain damage, which existed back to childhood. They found some profound mental disturbance that wasn't something recent. It was lifelong type disturbance. What was before, the people who saw him at the time, Dr. Benson, Samuel Benson, Dr. William Pierce, both did see him at the time. They were not asked to address the issue of competency. However, at the federal hearing, Gerald Engler, my opponent from the Attorney General's office, did delve into that. I believe it was with Dr. Benson, and he said at the time he saw the defendant, he was not incompetent. However, there was also evidence from people who likewise saw the defendant during that period, that he had good days and bad days. That he wasn't a blithering idiot, as one person referred to him all the time. That he might go through four or five days when he'd be fine and seem pretty lucid. Other times, he was like a roller coaster. He was getting drugs in jail. We've got that well documented. This would be the evidence submitted by stipulation declarations not actually heard by Judge Jensen. People who saw him at the time, for example, there was a jail nurse, Helen McAllister, and that's before this court. Record excerpts, it's number nine, beginning on page 118. She said she saw him daily when she worked in the jail. Some days he was fine. They would talk 10 or 15 minutes. Now, this is during trial, pretrial proceedings. Other times she'd see him and she could not engage in conversation because he would just be out of contact with reality. He'd be delusional. She used the word disoriented. She said it was obvious to her that he was getting drugs. It was well known then that drugs were coming into the jail, even through jail employees, which I know would be surprising in San Francisco, but at least then it happened. The testimony was that he was on LSD while he was in jail during the trial. Let me ask you, this is kind of a hypothetical, but if a defendant starts taking drugs while he's on trial and makes himself less competent to follow his own trial, does that mean that he can't be tried because he's on drugs? Well, if you have somebody who already has a preexisting severe mental illness, brain damage, and all the underlying mental illnesses that he suffered from, and if this person is sitting in jail and jail employees are willing to look the other way or help smuggle drugs in for a payment, and they were even pulling drugs in on a cord from a window, I mean, they had a variety of ways they were getting drugs in to him. Even a jail trustee, we have a declaration in Excerpt 10, beginning at page 121, who talked about he helped smuggle drugs in to this defendant. They even exchanged drugs when he was low on drugs. It seems to me that one can't, of course I'm not commending the defendant for taking the drugs, but I think the point is regardless of how he got that way, if it reduced him to being mentally incompetent at different points in the trial, regardless of the reason, then the trial becomes a walking constitutional, a flowing constitutional violation. Marion Larrick, Excerpt 12, Sherry Andrews, 11, these are all people who saw him during the time. But what about the, suppose that he was taking LSD and he comes to trial, the evidence in front of the trial court, there's substantial evidence that he was passing notes, that he was able to assist his counsel in the defense of his case. He was passing notes to him, there's correspondence, he participated in jury selection, there's a host of other evidence that shows that even if he were taking these drugs, he was still competent as defined by the law. The state has submitted, and it's before this court, some correspondence or notes of the defendant submitted by his trial attorney, that certainly reflects on the days those were written that he was not incompetent. We've never contended it was a constant throughout the trial. There were other days when there were no notes, and those were the bottom part of the roller coaster when it took a dip. There were good days, as I said, and there were bad days. And, again, Your Honor, we're not contending that each and every day of the trial he was mentally incompetent any more than it's contended that he would be competent every day. So what is the trial judge supposed to do in that circumstance, have a competency hearing every day? That's where the ineffectiveness of the trial attorney comes in. He knew he had admitted, for example, to Marion Larrick, who has a business in the South Bay, during the trial that the defendant had serious mental problems, was crazy, hit on the head as a child, and the defendant was getting drugs in the jail. He also had made admissions to some other people, for example, Larry Lowry, another witness, Excerpt 8, that he knew the defendant had serious mental problems, but he didn't want to present the evidence because it hurt his other client, Linda, Linda Allen, herself. There were some admissions made. So the attorney knew, and assuming the trial judge, the turning over the table or upending it and his bizarre comments when he tried to plead guilty, all that, assuming that that was not enough to trigger an inquiry by the judge, even if it was not, the trial attorney himself, the defense attorney, had enough that he should have pursued the issue, should have raised it, just as he did not raise the issue of the defendant's, raise any defense at the guilt phase, even though it was there, which is not technically before the court. Let's fast forward to Judge Jensen's decision again for a minute. And I take it you're the fourth counsel Kenan's had. You're not one of the three that testified at the hearing, obviously. Oh, no, no, no, no, no. Right. But as I understand it, each of the three prior attorneys testified that they didn't believe that Kenan was incompetent. All right. Two of the attorneys were the ones who were at trial who were the ones, with all respect, felt under attack, were being attacked, Mr. Schwartzbeck, particularly Gerald Schwartzbeck. I'm not saying he should not be believed. I'm not saying he should or should not. Well, of course we're not going to retrial that. I totally agree. I don't want to get into retrying the case. All right. Right. But Mr. Janowitz, Herb Janowitz, who represented the defendant initially and then was replaced by Mr. Schwartzbeck, actually went into court and presented to a judge in an in-chambers hearing evidence that the defendant was suffering from severe mental illness. He did not see the defendant that often, and he said he could not say that the defendant was mentally incompetent. And he was removed from the case. He wasn't in the case that long, I might add that. The attorney had a duty to bring this issue to the judge. I think the most condemning thing and what really has brought this issue to a head with us or with me is that this attorney got the defendant to sign papers of a waiver of the conflict after he had blamed in open court this defendant in defending the wife. But isn't there testimony that, in fact, the defendant really wanted this attorney? Of course. Because no one else would represent him. He thought this lawyer was a super person, a super man. But there's also evidence in the record that nobody else. He could not get other representation. Right. At least that was his belief. But I submit that when the attorney submitted this conflict waiver, the attorney had a duty. I mean, I know he wanted to be appointed in the case because this was the capital case. The other defendant was not capital. But when he presented the waiver, he should have in all candor have presented to the judge the fact that this client has serious mental problems. And, of course, the judge had reluctance about accepting the waiver. It is the waiver of the conflict. Yes. Okay. And that would have been an ideal time for the attorney to say, look, Your Honor, I want to be totally open above board. This man has serious mental illness. He has problems. He's been getting drugs. That's even in the record in a previous hearing, getting drugs in the jail. And maybe just out of an abundance of caution, he should be evaluated and looked at on the confidence of the issue just to be sure this is a valid waiver. That was never done. And that's what creates the problem in this case is because the conflict of this attorney, he even admitted, which is evidence before this court, that he could not put on certain testimony out of fear that it might hurt his other client. Now, that's a conflict. And an issue, and after having already attacked his new client or client-to-be and blaming everything on him and defending the first client, it seems like out of an abundance of caution that attorney should have really bent over backwards with his knowledge that this defendant had a lifelong history of mental illness, which he admitted to Marion Larrick, he admitted to Larry Lowery, that this defendant had serious problems and that he was getting drugs at that time off and on in the jail. The court should have been alerted to it. I would think if I was the judge I'd be horrified to later learn this. Why didn't you tell me? Maybe he was confident. Maybe he wasn't. But we should resolve it. We should deal with it. If I may reserve my time. You may. Remain two minutes. About two minutes left. Thank you. Thank you. May it please the Court. This case I think we're losing sight a little bit of where we stand now or where this Court stands and what it has to review. As the Court knows, there was a competency hearing or evidentiary hearing in the district court in which the district court made a finding that the defendant was competent to stand trial. That's a factual finding. It cannot be reversed by this Court in the absence of clear air by the district court, and it's our position that there was no clear air, in fact that the abundant and overwhelming weight of the evidence showed that the defendant was at all times competent. If he was at all times competent, the trial court necessarily had no duty to hold a competency hearing on its own motion, and the defense attorney did not act ineffectively in failing to bring a competency issue to the court if such a competency issue never existed. Let me respond briefly to some of the ---- I have a transcript of the hearing on October 7, 1980, immediately before Keenan signed the waiver of the conflict. There was nothing in the record on that. The hearing ---- I don't know what it was about, but it was the day after that that he signed the waiver of the conflict, which was two years before the trial. I believe it was in May of 1980. Let me look in the ---- I think I can get a quick reference if the Court would indulge me for just a moment. I thought I had had a summary. Well, I'm not finding it quickly. My recollection is the day of the ---- the day of the signed waiver is not identical with the day that the hearing was held. And again, I ---- I think it was the day after. The waiver was signed after the hearing or before the hearing? That's what I can't remember. I thought that the hearing was signed the day before, and then it's ---- or the waiver is signed ---- The whole point of this question is this was two years before he was on trial, and it seems that all the evidence we have is about competency to stand trial and his behavior at trial and what the lawyers should have been aware of, what the judge should have been aware of. But what about when he waived this conflict? Yes. And at that time, we've got two lawyers involved. We've got Janowitz, who's the lawyer up to that time, and then we've got Schwartzbeck, who's the lawyer that's coming in. Both of those lawyers testified at the evidentiary hearing that they did not believe Keenan was incompetent at that time. Janowitz knew of his duty. He was not exactly a ---- in some respects. And yet he knew ---- Janowitz knew of his duty to alert the Court to any belief that he had that Keenan might have been incompetent, and he never, never felt he needed to do that. So I think that's powerful evidence that Mr. Keenan was not incompetent at the time he asked, solicited Mr. Schwartzbeck to represent him and waived any conflict. In that regard. And then you have also Mr. Schwartzbeck's testimony as well. Both of those subject to credibility findings by the district court. The district court believed them. In our view, that's more than substantial evidence at that point. Let me speak ---- well, I think the evidence is clear that Mr. Keenan was competent at all times, including the time that he waived the ---- signed the waiver of conflict form and presented that testimony in court. If you look at the testimony that Petitioner's counsel says, well, it shows gibberish, we don't think it shows gibberish. It perhaps shows that Mr. Keenan was, you know, something of a manipulator, playing games. Who knows what he was doing? But these are lucid responses in plain English. And the Court has those excerpts of the transcript. They're quoted at length in the brief and they're also in the excerpts of record. Likewise, the correspondence that the people introduced at the ---- that the State introduced at the evidentiary hearing below was not limited just to the trial. There were many months of correspondence where excerpts were presented to the district court. And through all those examples of correspondence, the defendant is writing in plain English. He's lucid. He clearly knows he's charged with, at that time, capital crimes. He's even asking his attorney to do such things as, well, here's the clothes I want to wear. Give me a nice conservative blue suit, that sort of thing. This is over a period of many months that this is happening. The testimony of the psychiatrist, Dr. Benson, this was the psychiatrist who actually testified at trial, if the Court were to review his testimony at the evidentiary hearing, it would see that Dr. Benson interviewed Mr. Keenan over a period of many months leading up to the trial. Now, we don't have him going all the way back to 1980, but we have him interviewing him over a period of many months. Dr. Benson never believed that Mr. Keenan was incompetent to testify. So certainly, all the evidence taken together gave the district court a more than sufficient basis to conclude that Mr. Keenan was competent at all times. And there's no basis to overturn the district court's finding in that regard. Let me just say one other thing very briefly. Counsel has referred to a number of items that he called stipulated evidence. And I just want the record to be clear. We did not stipulate these declarations that the court also, the district court also or the retrospective analyses by the several mental health experts who executed declarations 10 years or later after the fact. The district court, at the conclusion of the evidentiary hearing, the district court agreed to take these into consideration. We did not stipulate to their truth. In fact, if I'm not mistaken, and I'm going by memory here, I think I might have even noted on the record that I had never had an opportunity to cross-examine any of these witnesses, test the basis for their knowledge. The best way to sum these up is the way that the district court summed them up. Even if one believed everything in there, in those declarations, at most they presented a conflict in the evidence. The district court resolved that conflict against the Petitioner. It did so on the basis of sufficient evidence, and that finding should be adopted in this Court. I will refrain from talking on the second issue, since counsel did not address that in his comments, unless the Court has specific questions. We've cited cases that we believe are directly on point as to the whether the Petitioner had a right to be present at the instruction conference or whether his personal waiver had to be given on those. On the sua sponte hearing question, how do you distinguish this case from Moran v. Godinez, which is a Ninth Circuit 1995 case? I think it was breached, but there we said that the district court judge was aware that the defendant was taking certain medications and that he should have held a hearing based on that and some of the other behaviors of the defendant. Right. I was probably better prepared to – I thought the Court was going to ask me how I distinguish it from the more recent cases, Oldham v. Hoodford. Well, that one, too, but Moran has the – I mean, the whole section on, well, the judge was aware that he was taking these drugs and what the drugs were and – Right. And all we know in this case is that the defendant did tell the Court he was taking medication. All right? That's it. There's no evidence that the Court had before it. In fact, there's no evidence in the record that these were some sort of psychotropic drugs. Something – medication, of course, means there's a whole spectrum, and I would, you know, strongly advise against any rule that says if a – whenever a defendant says I'm taking medication, that that immediately triggers a duty to have an incompetency hearing. I think you determine it from all the circumstances. The defendant was giving lucid answers. No attorney was telling the Court, by the way, Judge, we think that our client here is incompetent. That never happened. But he did – he did tell the judge he was taking medication. That's correct. Did the judge ask what it was? No. What effects it would have on him? Because in Odell, the judge – there's evidence the judge was aware of the psychiatric history. Correct. The judge had – the quote I have is the judge knew of the comprehensive record of the entire psychotropic history of the defendant and the mental illnesses that the defendant, in Odell, had faced, the hospitalizations and so on and so forth. That was all before the judge in Odell. No evidence that that was before this judge. And we would submit it's not our burden to fill in the gaps. But the judge did not, in the absence of petitioner, have an opportunity to present any evidence that he might have had to show what the trial judge was aware of or should have been aware of. He didn't do so. And on the basis of this record, with the transcripts that are showing generally lucid, directed responses from the defendant, to characterize these as gibberish or bizarre, you know, that's just rhetoric. We believe the transcripts speak for themselves and would not have alerted any reasonable judge to the need for a competency hearing because there was no need for a competency hearing. With that, unless there are further questions, we're prepared to submit. Yes, this is a very pedantic point, but if you look at your brief on page 21, I think you omitted a not from your heading, your headnote on argument one. And the heading itself. Yeah. Was mentally. You're right. There's also typos in it. Everybody makes typos. But I read it two or three times before coming today, and I never saw it till just now. So that's a professorial instinct. We move. Thank you, Professor. We move to amend our brief. To add the not. Thank you. Thank you. 15 seconds, Your Honors. I would like to point out on the heels of what was just covered with opposing counsel, and it's on page 28 of our opening brief. We actually set out the dialogue from the court when the defendant attempted to plead guilty. The question was, are you presently under the effect of any drug or medication? Answer, yes. Do you feel that in any way that has affected your ability to enter a free and voluntary plea to the charges? Answer, I don't know if I'm qualified professionally to say that, but I don't think so. Do you think it's free and voluntary? No. At another hearing, the defendant, when he was asked about medications, was he on any medication? This was on another occasion. This is at page 32 of our opening brief. In 33, he made reference to taking medication for epilepsy, and that's also before this Court's extensive evidence from people at the time, and subsequently diagnosed that he was actually suffering from seizures and was on medication in addition to the other medication he was getting illicitly while he was in jail. There was also reference to the correspondence being all lucid. I beg to differ with opposing counsel. Record excerpts 13, 14, 15, 17, all two of the letters, no, I'm sorry, three, 15, 16 and 17. He's writing to his attorney, and he refers to having just recently, one, he said, I've been going crazy. Another one said, I was crazy for a couple of days. I was mad. Then another one, he said, I quote, I was crazy. Attacks have gotten worse lately. I am a sicko. I think that was to Linda, the co-defendant who tried to kill him during the trial with bringing a gun into the courtroom. Excerpts 13 and 14, he's writing Linda, asking her to smuggle more drugs in and suggesting some very interesting ways for her to accomplish that. And are there any questions? With my five seconds, four left. Thank you, Your Honors. Thank you. We thank both counsel. This case is submitted for decision. Call the next case on the calendar. Thank you. All right, ready? May it please the Court.
judges: Noonan, Tashima, Wardlaw